UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ANTHONY WEBB,

      Plaintiff,

  v.

MAGISTRATE THOMAS O. BERIDON, et al.,

      Defendants.

Case No. 1:24-cv-43

JUDGE DOUGLAS R. COLE
Magistrate Judge Bowman

## OPINION AND ORDER

Before the Court is Magistrate Judge Bowman's Report and Recommendation (R&R, Doc. 4), which recommends that the Court dismiss Webb's complaint for failure to state a claim for relief. (*Id.* at #73). For the reasons stated more fully below, the Court agrees with the recommendation and **DISMISSES** Webb's Complaint (Doc. 3), but for slightly different reasons than stated in the R&R.

## BACKGROUND

Webb's claim arises out of a foreclosure action in the Hamilton County Court of Common Pleas. Complaint, *JP Morgan Chase Bank Nat'l Ass'n v. Anthony Webb*, No. A2204600 (Hamilton Cnty. Ct. Com. Pl. Dec. 16, 2022).[1] Webb is suing Magistrate

---

[1] "[T]he Court 'may take judicial notice of proceedings in other courts of record.'" *Dates v. HSBC*, No. 1:24-cv-81, 2024 WL 860918, at *1 n.1 (S.D. Ohio Feb. 29, 2024) (quoting *Granader v. Pub. Bank*, 417 F.2d 75, 82 (6th Cir. 1969)).

Thomas Beridon, who issued a decision recommending[2] that the state court order a foreclosure sale of Webb's property; Scott Leaman, the attorney representing JP Morgan Chase Bank, N.A., the mortgagee of the note hypothecated with Webb's property and the plaintiff in the foreclosure action; Leaman's law firm, Diaz Anselmo & Associates; and the State of Ohio. (Doc. 3, #55).

Webb makes several claims, the majority of which turn on his belief that the state court foreclosure proceedings were improper.[3] Webb bases this assertion on his belief that Leaman[4] "lacked standing" and violated the Truth in Lending Act by prosecuting a foreclosure action over an "original debt[,] [which was hypothecated by the mortgage note, that] was actually zero." (Doc. 3, #43). These statements underlie Webb's first three claims, labeled "wrongful foreclosure," a "violation of the Truth in

---

[2] Because Magistrate Beridon is a magistrate, rather than the presiding judge in the matter, his decision was a recommendation, and did not carry the force of law unless and until adopted by the presiding judge.

[3] More specifically, Webb challenges the events leading up to and including Magistrate Beridon's entry of a decision recommending that the state court find for JP Morgan and order Webb's property sold at a sheriff's sale. (Doc. 3, #43 (referring to the decision entered on the state court docket on January 24, 2024, Magistrate's Decision, *JP Morgan Chase*, No. A2204600 (Hamilton Cnty. Ct. Com. Pl. Jan. 24, 2024))). But the state court proceedings did not terminate with the entry of that decision. Webb himself filed objections to the magistrate's decision in the state court. Defendant's Objection to Magistrate's Decision Granting Plaintiff Default Judgement [sic] and Demand to Vacate Judgement [sic], *JP Morgan Chase*, No. A2204600 (Hamilton Cnty. Ct. Com. Pl. Feb. 2, 2024). And the state court, after considering the decision, Webb's objections, and JP Morgan Chase's response, adopted the decision on March 1, 2024. Entry Adopting Magistrate's Decision, *JP Morgan Chase*, No. A2204600 (Hamilton Cnty. Ct. Com. Pl. Mar. 1, 2024). As discussed below, this fact that additional proceedings occurred is fatal to several of Webb's claims about the harms relating to the Magistrate Beridon's recommendation.

[4] Presumably, when raising lack of standing one would direct that argument at a party and not their counsel. But while JP Morgan was the party who initiated foreclosure proceedings against him in state court, Webb never names it as a party in his complaint, instead attacking Leaman and his law firm, who represented JP Morgan in those proceedings.

2

Lending Act," and breach of contract. (*Id.* at #65). Webb further alleges that Leaman and Diaz Anselmo & Associates violated the Fair Debt Collection Practices Act (FDCPA)—but provides no specific details of debt collection *actions* these defendants took (though, as best as the Court can tell, Webb is disputing their ability to file a foreclosure action). (*Id.* at #47, 65). Webb's fifth claim, for alleged violations of (unspecified) federal trust and lien laws, largely duplicate these claims.[5] (*Id.* at #65). Webb's next claim is that the order of foreclosure and anticipated sheriff's sale slandered his title to the property. (*Id.* at #66). Finally, Webb claims Magistrate Beridon violated his civil rights by "signing and granting the defendant a default judgment." (*Id.* at #43). As a result, all these claims focus on the alleged unlawfulness of the process and outcome of the state court foreclosure proceedings.

Beyond that, Webb raises two claims for relief tangential to the foreclosure proceeding. He accuses Leaman (and his firm, when the Complaint is liberally construed) of having impaired his credit (labeling the claim "Slander of Credit"). (*Id.* at #60, 66 (alleging specifically that only Leaman provided the credit reporting agencies with notice of Webb's alleged default on the mortgage loan)). And he claims that as a result of these foreclosure proceedings, Defendants intentionally inflicted

---

[5] If there is a substantive difference between the other federal law claims and this "Violation of Federal Trust and Lien Laws" claim, Webb has not provided this Court sufficient clues to find it. By failing to "specify the provision or provisions. . . if any, that Defendants allegedly violated, or any facts pertaining to [such] a violation," Webb has not presented a coherent claim that Defendants violated any federal law or laws in his "5th Claim" for relief, (Doc. 3, #65). *Rogers v. Horwitz*, No. 1:20-cv-2568, 2023 WL 6383796, at *19 (N.D. Ohio Sept. 29, 2023); *Dates v. HSBC*, No. 1:24-cv-81, 2024 WL 860918, at *4 n.3 (S.D. Ohio Feb. 29, 2024) ("But citing an entire part of the regulatory code is not going to cut it [for purposes of stating a claim upon which relief may be granted].").

emotional distress (IIED) on him. (*Id.* at #66). Namely, these claims, when construed as liberally as possible, stem from actions other than the final dispensation of the state case.

In the R&R, the Magistrate Judge recommends dismissing Webb's complaint because this Court lacks subject matter jurisdiction. (Doc. 4, #73). In support of that conclusion, the Magistrate Judge asserts that (1) Magistrate Beridon enjoys absolute judicial immunity and (2) the *Rooker-Feldman* doctrine bars the plaintiff's claims. (Doc. 4, #71-72). Since the R&R finds the claims to be exclusively within the jurisdiction of the state court, it recommends dismissing Webb's complaint. (*Id.* at #73).

The R&R is currently before the Court for review.

## LEGAL STANDARD

The R&R advised both parties that they would have 14 days to serve and to file specific objections or else forfeit the Court's de novo review, (Doc. 4, #74). *Thomas v. Arn*, 474 U.S. 140, 152–53 (1985); *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019) (noting the "fail[ure] to file an[y] objection[s] to the magistrate judge's R&R … [constitutes a] forfeiture" of such objections (emphasis omitted)); 28 U.S.C. § 636(b)(1). Neither party objected, so this Court reviews the R&R for "clear error." *See Redmon v. Noel*, No. 1:21-cv-445, 2021 WL 4771259, at *1 (S.D. Ohio Oct. 13, 2021) (citing the advisory committee notes to Federal Rule of Civil Procedure 72(b)).

Further, as noted above, Webb is proceeding pro se. That matters because a pro se litigant's pleadings are to be construed liberally and are subject to less

4

stringent standards than formal pleadings filed by attorneys. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir. 1985). But pro se litigants still must comply with the procedural rules that govern civil cases. *McNeil v. United States*, 508 U.S. 106, 113 (1993). And "[t]he liberal treatment of pro se pleadings does not require the lenient treatment of substantive law." *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010).

## LAW AND ANALYSIS

The Magistrate Judge's R&R suggests that the Court lacks subject-matter jurisdiction over the Complaint on the basis of the *Rooker-Feldman* doctrine and based on Magistrate Beridon's entitlement to absolute judicial immunity.[6] The R&R is correct that, before proceeding to the merits, this Court must first determine whether it has subject matter jurisdiction to hear Webb's claims. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998). But the Court concludes that the Magistrate Judge erred at the margins in describing the nature of the jurisdictional defects here.

The Court may take subject-matter jurisdiction issues in any order it wishes, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), which can include resolving questions of sovereign immunity. *Nair v. Oakland Cnty. Cmty.*

---

[6] It is true that *Rooker-Feldman* serves as bar to the Court's exercising subject-matter jurisdiction over a Complaint. *Dates*, 2024 WL 860918, at *6. But a defendant judicial officer who asserts absolute judicial immunity raises only a personal *defense* to suit—judicial immunity does nothing to affect a federal court's subject-matter jurisdiction over a claim. *See Kentucky v. Graham*, 473 U.S. 159, 166–67 (1985). Therefore, it is not correct to claim that the Court lacks subject-matter jurisdiction over the suit on the basis that a state court judge might be able to invoke absolute judicial immunity as a defense to the action.

5

*Mental Health Auth.*, 443 F.3d 469, 477 (6th Cir. 2006). Start with an easy one. Webb names the State of Ohio as a defendant. But, absent a constitutionally valid congressional abrogation of state sovereign immunity, and Webb points to none here, the Court lacks authority to issue judgment over any claims (no matter what relief is requested) against Ohio. *Williams v. Parikh*, No. 1:23-cv-167, 2023 WL 8824845, at *4, n.5 (S.D. Ohio Dec. 21, 2023). So, these claims must be dismissed without prejudice.[7]

Next turn to the claims raised against the individual defendants (including Magistrate Beridon in his individual capacity, *see supra* note 6). The Court finds that these claims are easily resolved by lumping them into two groups: those several claims that are intertwined with the foreclosure action, and the two claims (Slander of Credit and IIED) that raise distinct harms.

The central problem for Webb's first set of claims generally attacking the lawfulness of Defendants' actions in the foreclosure proceedings is that they fail for want of Article III standing. To establish standing to sue in federal court, a plaintiff must demonstrate the "triad of injury in fact, causation, and redressability." *Steel*

---

[7] Webb does not identify whether Magistrate Beridon is sued in his individual or official capacity. Construing the Complaint liberally, the Court concludes that both sets of claims are raised. As Magistrate Beridon is judicial officer who works for the Ohio state courts, claims raised against him in his official capacity are actually claims against the State of Ohio. *Parikh*, 2023 WL 8824845, at *5–*7. So sovereign immunity's bar to claims against Ohio would apply equally to bar relief for claims raised against Beridon in his official capacity. *Id.* Yes, certain official capacity suits are excepted from the reach of state sovereign immunity under *Ex parte Young*. *Id.* at *5. But the exception has no application here, where the state official is a judicial officer. *Id.* at *6–*7. So, for the same reasons that apply to the claims against Ohio, the Court dismisses the claims against Magistrate Beridon in his official capacity without prejudice.

*Co.*, 523 U.S. at 103 (1998) (footnote omitted). Webb's claims arising out of the foreclosure proceeding stumble on the causation prong. Causation requires "a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant." *Id.* at 103. As explained above, Webb's claims challenging the foreclosure proceedings stem from the parties' alleged actions leading up to and culminating in Magistrate Beridon's decision. (Doc. 3, #43, 65–66); *see supra* note 1. But as noted, *supra* note 1, a magistrate's decision in Ohio courts has no legal effect, unless and until the state court adopts the decision. Ohio R. Civ. P. 53(D)(4)(a) ("A magistrate's decision is not effective unless adopted by the court."). So unless the magistrate's decision was adopted by the state court, Webb suffered no legally cognizable injury as any alleged injuries Webb suffered are traceable only to the *adoption* of the order, not the Magistrate's recommendation.

This point is clear from the fact that any of the alleged federal or state law violations Webb alleges that are tied to the validity of the proceedings could be raised in objections to Magistrate Beridon's decision. Ohio R. Civ. P. 53(D)(3)(b) (authorizing objections to magistrate's decisions); Ohio R. Civ. P. 53(D)(4)(d) (requiring "the court [to] undertake an independent review" of a magistrate's decision upon the filing of objections). And that means that if Webb's claims are meritorious, he would be able to obtain a favorable resolution by using his objections to convince the state court judge to reject Magistrate Beridon's decision and to dismiss the action. Further, it means that any harm arising from the state court proceedings is made concrete only by the state court's adoption of the decision. Even if there was a procedural violation

7

along the way, the only "concrete harm" Webb could have suffered would have had to result from the state court adopting the order and thereby giving it legal effect. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410–11 (2013). But against that backdrop, and given that Webb did not name the state court judge, if the order caused any redressable harm to Webb, that harm is not traceable to the individual Defendants he names here. So the Court will dismiss without prejudice the claims against the individual defendants he names here that challenge the validity of the state court proceedings because Webb lacks standing to prosecute them.

That leaves two other claims: Webb's claims alleging slander of credit and intentional infliction of emotional distress—both of which arise under state law. *Wilson v. Sears Roebuck Co.*, 2009-Ohio-16, ¶ 34 (5th Dist.) (explaining that slander of credit is a form of defamation); *Ford Motor Credit Co. v. Ryan*, 939 N.E.2d 891, 914 (Ohio Ct. App. 2010) (IIED). But as the Court found above that it lacked subject-matter jurisdiction over the federal-law claims and given complete diversity is lacking between the parties (Webb and Beridon are both alleged to be Ohio citizens, (Doc. 3, #41–42)), the Court has jurisdiction over these state-law claims only to the extent authorized by the supplemental jurisdiction statute. 28 U.S.C. § 1367. At this point, there are no federal questions left and the case has not proceeded beyond the filing of the Complaint (no Defendant has yet been served). So as a matter of comity, the Court finds it best to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) and to dismiss these remaining state-law claims without prejudice. *Parikh*, 2023 WL 8824845 at *12.

8

Finally, because Webb is proceeding IFP, the Court must assess, pursuant to 28 U.S.C. § 1915(a)(3), whether an appeal taken from this Order would be "in good faith." Because Webb's Complaint "lacks an arguable basis either in law or in fact," any appeal would not be taken in good faith. *Tallent v. Knight*, No. 22-5126, 2022 WL 18862074, at *2 (6th Cir. Sept. 7, 2022) (quoting *Neitzke v. Williams*, 490 U.S. 319, 325 (1989)).

## CONCLUSION

For the reasons stated above, the Court accepts the Magistrate Judge's recommendation of dismissal, albeit for slightly different reasons as stated above. Thus, the Court **ADOPTS IN PART** and **REJECTS IN PART** the R&R (Doc. 4). And the Court **DISMISSES** Webb's action **WITHOUT PREJUDICE.** The Court **CERTIFIES**, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal of this Opinion and Order would not be made in good faith, and the Court **DENIES** Webb leave to appeal in forma pauperis.

The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

**SO ORDERED.**

July 16, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**

9